OPINION
Appellants Karen Wursthorn and Michael Taylor are appealing the decision of the Stark County Court of Common Pleas, Juvenile Division, that granted permanent custody, of the parties' minor child, to the Stark County Department of Human Services ("Agency"). The facts giving rise to this appeal are as follows.
The Agency first became involved in this matter on September 28, 1996. On this date, appellants took their minor child to Alliance Community Hospital with a fever and cold-like symptoms. The hospital noted that the child had broken blood vessels in the left eye and surface bruising on the cheeks. A chest X-ray indicated the child had a fracture to her back. The child was immediately transported to Akron Children's Hospital, where a full body skeletal X-ray disclosed that the child also had a broken femur.
Upon being interviewed, both appellants had various explanations as to how the minor child received the injuries. During her hospitalization, the child gained a significant amount of weight which led the hospital staff to question whether or not the child was being properly fed by appellants. It was also discovered that Appellant Michael Taylor had a five-month old son, in North Carolina, that suffered a broken humerus, femur, ribs and spine. It was suspected that Appellant Michael Taylor caused these injuries in his minor son.
Based upon the above abuse, the Agency filed a complaint alleging that the minor child was abused and prayed for temporary custody to be awarded to the Agency. The trial court conducted an emergency shelter care hearing on October 2, 1996 and found probable cause to remove the child from her home and award temporary custody to the Agency. The trial court conducted an adjudicatory hearing on October 2, 1996. This hearing was continued to December 27, 1996.
Prior to the hearing in December, Appellant Michael Taylor pled guilty to two counts of child endangering and Appellant Karen Wursthorn was found guilty of one count of child endangering for failing to protect the minor child from abuse. The trial court, in the criminal cases, sentenced Appellant Michael Taylor to serve up to seven years and sentenced Karen Wursthorn to serve up to three years.
Following the adjudicatory hearing, the trial court found the minor child to be an abused child. The trial court conducted the disposition hearing on the same date and awarded temporary custody of the minor child to the Agency and the case plan was adopted and filed. During this time period, the Agency investigated possible relative placement with both maternal grandmother, Faye Fisher, and maternal grandfather and step-grandmother, Adam and Patricia Wursthorn. The home study, with regards to Faye Fisher, indicated that she did not have appropriate housing for the child. Further, Faye Fisher had previously been found to be an unfit parent to Appellant Karen Wursthorn, due to alcoholism, possible drug abuse, domestic violence and overall neglect.
The home study, as it pertained to Adam and Patricia Wursthorn, indicated that the Wursthorns had a long history with the Agency. In 1985, the Agency conducted a physical abuse investigation that was substantiated, with Adam Wursthorn as the perpetrator. In 1988, the Agency substantiated claims of neglect and physical abuse and in the same year, on a separate occasion, the Agency substantiated claims of emotional maltreatment. The Agency also conducted another physical abuse investigation in 1990. Further, it was also discovered that Adam Wursthorn had two previous criminal convictions, in 1992 and 1993, for a weapons charge and two charges of aggravated menacing.
On February 4, 1997, the Agency filed a motion for permanent custody. The trial court conducted a hearing with regard to the Agency's motion on July 3, 1997. Both appellants were transported, from prison, in order to attend the hearing. Based upon the evidence presented at the permanent custody hearing, the trial court, on July 31, 1997, awarded permanent custody of the minor child to the Agency. Both parents filed notices of appeal. The two cases have been consolidated for purposes of appeal. The parties present the following assignments of error for our consideration:
Appellant Karen Wursthorn's Assignments of Error
 I. THE TRIAL COURT'S ORDER TO GRANT PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF HUMAN SERVICES SHOULD BE REVERSED AS THERE WAS NO FINDING BY CLEAR AND CONVINCING EVIDENCE THAT THE APPELLANT-MOTHER OF KELSEY TAYLOR IS AN UNFIT PARENT.
 II. THE TRIAL COURT'S FINDING, AGAINST THE RECOMMENDATION OF THE GUARDIAN AD LITEM, THAT THE BEST INTEREST OF KELSEY TAYLOR WAS SERVED BY GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF HUMAN SERVICES FOR PURPOSES OF ADOPTION, RATHER THAN TO GRANT CUSTODY TO HER MATERNAL GRANDPARENTS WAS ERROR AND SHOULD BE REVERSED.
 Appellant Michael Taylor's Assignment of Error
 I. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTEREST OF THE CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE PRESENTED AT TRIAL.
 I
We will address appellants' first assignments of error simultaneously as both concern whether the trial court's grant of permanent custody to the Agency is against the manifest weight of the evidence. We find the trial court's grant of permanent custody is not against the manifest weight of the evidence.
As a reviewing court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries
(Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. MorrisCo. v. Foley Construction (1978), 54 Ohio St.2d 279, syllabus.
The relevant statute, in reviewing appellants' first assignments of error, is R.C. 2151.414. This statute provides:
 (B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
 (2) The child is abandoned and the parents cannot be located;
 (3) The child is orphaned and there are no relatives of the child who are able to take permanent custody.
In determining best interest of the child, R.C. 2151.414(D) provides:
 In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A) (4) or (5) of section 2151.353 * * * or division (C) of section 2151.415 * * * of the Revised Code, the court shall consider all relevant factors, including, but not limited to the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
Based upon our review of the record, we find the trial court's determination that it was in the best interest of the minor child to grant permanent custody to the Agency is not against the manifest weight of the evidence. Mary Pantalone, a social worker called to testify at trial, stated that the child suffers from no physical or mental problems and has completely recovered from her injuries that caused her to be removed from her parents' residence. Tr. at 36-37. Ms. Pantalone also testified that the child has spent almost half her life in foster care and has not seen either parent since being placed in the Agency's custody. Tr. at 37-38. Further, Ms. Pantalone stated that the child had no bonding with any biological member of her family and was currently placed in a foster home which would be interested in adopting her. Tr. at 39.
Thus, we find the trial court's determination, that it was in the minor child's best interest to grant permanent custody to the Agency, is not against the manifest weight of the evidence.
However, in addition to the best interest determination, the trial court must also consider the factors set forth in R.C.2151.414(E)(1). Section (E) provides as follows:
 (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A) (4) of section 2151.353 * * * of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A) (4) of section 2151.353 * * * of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
The trial court found the following factors present under R.C.2151.414(E):
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. * * *
 (5) The parent is incarcerated for an offense committed against the child or a sibling of the child;
 (9) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect;
 (11) The parent committed abuse as described in section 2151.03 * * * of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code and a sibling of the child previously has been permanently removed from the home of the child's parents because the parent abused or neglected the sibling.
The trial court's finding that the minor child could not be placed with appellants within a reasonable time or should not be placed with appellants is not against the manifest weight of the evidence. As to subsections (E) (5) and (11), prior to the adjudicatory hearing, both appellants had been indicted on charges of child endangering and were incarcerated pending trial. Further, at the time of the adjudicatory hearing, Appellant Michael Taylor had pled guilty to two counts of child endangering and Appellant Karen Wursthorn was found guilty of one count of child endangering for failure to protect the minor child from abuse. Both appellants received prison terms. Under subsection (E) (1), due to their incarceration, appellants were unable, through the case plan, to remedy the situation that originally caused the child to be removed from their home. Under subsection (E) (9), appellants are also unable to provide food, clothing, shelter or other basic necessities.
Based upon the above evidence, the trial court's judgment terminating appellants' parental rights is not against the manifest weight of the evidence.
Appellants' first assignments of error are overruled.
 II
In her second assignment of error, Appellant Karen Wursthorn contends the trial court erred when it found, against the recommendation of the guardian ad litem, that the best interest of the minor child was served by granting permanent custody to the Agency for purposes of adoption as opposed to granting permanent custody to her maternal grandparents. We disagree.
Appellant Karen Wursthorn's second assignment of error sets forth a manifest weight of the evidence argument and we will review it pursuant to the standard set forth in appellants' first assignment of error. R.C. 2151.412(G) governs placement of a child with a relative and provides, in pertinent part:
 (G) In the agency's development of a case plan and the court's review of the case plan, the agency and the court shall be guided by the following general priorities:
* * *
 (2) If both parents of the child have abandoned the child, have relinquished custody of the child, have become incapable of supporting or caring for the child even with reasonable assistance, or have a detrimental effect on the health, safety, and best interest of the child, the child should be placed in the legal custody of a suitable member of the child's extended family;
* * *
 (5) If the child cannot be placed with either of the child's parents within a reasonable period of time or should not be placed with either, if no suitable member of the child's extended family or suitable nonrelative is available to accept legal custody of the child, and if the agency has a reasonable expectation of placing the child for adoption, the child should be committed to the permanent custody of the public children services agency or private child placing agency;
The language of R.C. 2151.412(G) is precatory rather than mandatory. See, In Re Hiatt (1993), 86 Ohio App.3d 716; In ReDixon (Nov. 29, 1991), Lucas App. No. L-91-021, unreported. Therefore, this statute does not require the trial court to act in a specific manner but, rather, suggests criteria to be considered in making its decision regarding case plan goals. Dixon, supra.
Based upon the evidence contained in the record, the trial court's decision to place the minor child with the Agency as opposed to the minor child's grandparents Adam and Patricia Wursthorn is not against the manifest weight of the evidence. The evidence in the record indicates that the Wursthorns have a long history with the Agency dating back to 1985. State's Exhibit 3. As noted in the statement of facts, in addition to allegations of abuse against Adam Wursthorn, he was also convicted on two separate occasions of criminal offenses. Tr. at 66. Further, at no time did the family seek counseling to remedy these problems.
The trial court's judgment denying the maternal grandparents Adam and Patricia Wursthorn custody of the minor child is not against the manifest weight of the evidence.
Appellant Karen Wursthorn's second assignment of error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is hereby affirmed.
Wise, J., Farmer, P. J., and Gwin, J., concur.